## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LCLFG, LLC D/B/A<br>MUNZ ROOFING AND SIDING<br>1414 Radcliffe Street, Suite 100<br>Bristol, Pennsylvania 19007<br><br>and<br><br>ARMOR EMPLOYEE HOLDCO, LLC<br>One Letterman Drive<br>Building C, Suite CP-500<br>San Francisco, California 94129<br><br>and<br><br>ARMOR BUYER PARENT, LP<br>One Letterman Drive<br>Building C, Suite CP-500<br>San Francisco, California 94129<br><br>       Plaintiffs,<br><br>v.<br><br>RICHARD ("RICK") COVER,<br>82 Versailles Boulevard<br>Cherry Hill, New Jersey 08003<br><br>and<br><br>BRIAN ATKINSON,<br>5830 E 2nd Street<br>STE 7000 PMB 30970<br>Casper, Wyoming 82609<br><br>and<br><br>FUGIDA, LLC D/B/A<br>BLUE COLLAR EXTERIORS<br>5830 E 2nd Street<br>STE 7000 PMB 30970<br>Casper, Wyoming 82609-4308<br><br>      Defendants. | Civil Action No.:<br><br><br><br>**VERIFIED COMPLAINT** |

Plaintiffs, LCLFG, LLC d/b/a Munz Roofing and Siding, Armor Employee HoldCo, LLC and Armor Buyer Parent, LP (collectively "Plaintiffs"),by  and through their attorneys, for their Verified Complaint, allege as follows:

## THE PARTIES

1.     Plaintiff, LCLFG, LLC d/b/a Munz Roofing and Siding ("Munz"), is a Pennsylvania limited liability company with a principal place of business at 1414 Radcliffe Street, Suite 100, Bristol, Pennsylvania 19007.

2.     Plaintiff, Armor Employee Holdco, LLC ("Employee Holdco"), is a Delaware limited liability company with a principal place of business at One Letterman Drive, Building C, Suite CP-500, San Francisco, California 94129.

3.     Plaintiff, Armor Buyer Parent, LP ("Buyer Parent"), is a Delaware limited partnership with a principal place of business at One Letterman Drive, Building C, Suite CP-500, San Francisco, California 94129.

4.     Defendant, Richard Cover, also known as "Rick" Cover ("Cover"), is an individual residing at 82 Versailles Boulevard, Cherry Hill, New Jersey 08003.

5.     Defendant, Brian Atkinson ("Atkinson"), is an individual whose business address is believed to be 5830 E 2nd Street, Suite 7000 PMB 30970, Casper, Wyoming 82609. Upon information and belief, Atkinson resides in the Commonwealth of Pennsylvania or the State of New Jersey.

6.     Defendant, Fugida, LLC d/b/a Blue Collar Exteriors ("Blue Collar Exteriors" and, collectively with Cover and Atkinson, "Defendants"), is a Wyoming limited liability company with a principal place of business at 5830 E 2nd Street, Suite 7000 PMB 30970, Casper, Wyoming 82609. Upon information and belief, Blue Collar Exteriors conducts business operations in the Commonwealth of Pennsylvania.

**JURISDICTION AND VENUE**

7.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs assert a federal claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise out of the same case or controversy as Plaintiffs' federal claims.

8.      Further, an actual, justiciable controversy now exists between the parties, and the requested relief is proper under 28 U.S.C. §§ 2201-2202.

9.      Venue is appropriate in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and the defendants are subject to the court's jurisdiction with respect to this action in this district.

**FACTUAL ALLEGATIONS**

10.     Munz is a leading provider of roofing and siding services in the Commonwealth of Pennsylvania and the State of New Jersey. Munz has built a strong reputation for quality workmanship, customer service, and competitive pricing throughout its service territory.

11.     Richard Cover ("Cover") was hired as General Manager of Munz pursuant to an Offer Letter dated March 17, 2025, with a start date of March 31, 2025.

12.     As General Manager, Cover occupied one of the most senior positions within Munz and had unfettered access to Munz's most sensitive confidential information, including but not limited to customer lists, pricing strategies, vendor relationships, employee information, and financial data.

13.     Cover was compensated handsomely for his position, with a base salary of $175,000 per year plus significant bonus potential tied to the performance of Munz's business.

3

14.     In exchange for this generous compensation and access to Munz's confidential information, Cover agreed to certain obligations of loyalty and confidentiality, as set forth in the Offer Letter and the Class B Unit Award Agreement he executed on September 30, 2025.

15.     Plaintiffs go to great lengths to keep their trade secrets and proprietary information secret and out of the hands of competitors and the general public.

16.     Munz's confidential information includes, but is not limited to: customer lists and contact information; customer preferences and project histories; pricing models and bidding strategies; vendor and supplier relationships and pricing; employee compensation and performance data; marketing strategies and business development plans; and operational procedures and best practices developed over years of business operations.

17.     This confidential information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by Munz's competitors, and Plaintiffs have taken reasonable measures to maintain its secrecy.

18.     Cover's access to this confidential information was granted solely for the purpose of performing his duties as General Manager of Munz, and not for any personal benefit or for use in connection with any competing business.

19.     Plaintiffs have a vital economic interest in protecting their confidential information, customer relationships, and goodwill. The preservation and protection of this information is essential to the maintenance and continued success of Munz's business.

**<u>Defendant Cover's Default Under the Grant Agreement</u>**

20.     On or about September 30, 2025, Cover entered into a Management Unit Grant and Contribution Agreement (the "Grant Agreement") with Plaintiffs.

21.     Pursuant to the Grant Agreement, Cover received a grant of 89,550 Class B Incentive Units in Employee Holdco.

22.    The Grant Agreement contains extensive restrictive covenants that were a material inducement for Plaintiffs' decision to grant Cover the valuable equity award.

23.    Section 2(f) of the Grant Agreement expressly provides that the restrictive covenants "constitute a material inducement for the Company to make the grant of Class B Incentive Units."

24.    Section 6(b) of the Grant Agreement contains a noncompetition covenant that expressly prohibits Cover from engaging in competitive activity.

25.    Specifically, Section 6(b) provides that Cover shall not "directly or indirectly, own, manage, operate, control, be employed by (whether as an employee, consultant, independent contractor or otherwise, and whether or not for compensation) or render services to any Person, in whatever form, engaged in the same or similar business as the Company or any of its Subsidiaries or any other business in which the Company or any of its Subsidiaries is engaged" for a period of twenty-four (24) months following the termination of his employment.

26.    The Grant Agreement defines "Competitor" in Section 6(b) to include "any Person engaged in or about to become engaged in the business of providing roofing, gutter and/or siding and related services in the Restricted Area." The "Restricted Area" is defined to include any geographic area where Munz conducts business operations, which includes portions of the State of New Jersey and Commonwealth of Pennsylvania :

| Pennsylvania | New Jersey |
|---|---|
| Bucks County, PA | Burlington County, NJ |
| Chester County, PA | Camden County, NJ |
| Delaware County, PA | Hunterdon County, NJ |
| Lehigh County, PA | Mercer County, NJ |
| Montgomery County, PA | Middlesex County, NJ |
| | Somerset County, NJ |

*See* https://munzroofing.com/service-area/ (last visited, February 11, 2026).

27.     Section 6(c) of the Grant Agreement contains a nonsolicitation covenant that prohibits Cover from soliciting employees or customers. Specifically, Section 6(c) provides that Cover shall not "directly or indirectly, (i) solicit, recruit or hire any employee of the Company or any of its Subsidiaries or seek to persuade any such employee to discontinue employment or (ii) solicit or encourage any customer of the Company or any of its Subsidiaries to terminate or reduce its business with the Company or any of its Subsidiaries" for a period of twenty-four (24) months following the termination of his employment.

28.     Section 6(a) of the Grant Agreement contains a confidentiality covenant that indefinitely prohibits Cover from disclosing Confidential Information. Section 6(a) provides that Cover "shall not at any time (whether during or after Participant's employment with the Company or any of its Subsidiaries) disclose or use for Participant's own benefit or purposes or the benefit or purposes of any other Person" any Confidential Information.

29.     "Confidential Information" is broadly defined in the Grant Agreement to include "all information about the Company or any of its Subsidiaries, or their respective business, operations, customers, clients or affairs, including, without limitation, trade secrets, techniques, know-how, data, inventions, processes, procedures, methods of doing business, financial data, lists of customers and suppliers, and all other confidential and proprietary information."

30.     Cover knowingly and voluntarily agreed to these restrictive covenants in exchange for the substantial economic benefit of the Class B Incentive Units. Section 6(d) of the Grant Agreement further provides that the restrictive covenants "are reasonable and necessary to protect the legitimate interests of the Company and its Subsidiaries."

31.     The Grant Agreement also provides Plaintiffs with specific remedies in the event of a breach. Section 6(e) provides that "in the event of any breach or threatened breach of the

provisions of this Section 6, the Company and its Subsidiaries shall be entitled to an injunction restraining Participant from such breach."

32.     Section 6(e) further provides that "Participant acknowledges that the Company and its Subsidiaries would be irreparably injured by a violation of the provisions of this Section 6 and agrees that the Company and its Subsidiaries, in addition to any other remedies available to them for such breach or threatened breach, shall be entitled to a preliminary injunction, temporary restraining order, or other equivalent relief, restraining Participant from any actual or threatened breach of the provisions of this Section 6."

33.     Cover's tenure as General Manager was marked by his failure to meet the performance metrics established under the Grant Agreement. On or about November 21, 2025, facing imminent termination for cause, Cover elected to resign rather than be dismissed. His departure, however voluntary in form, did not release him from his contractual obligations. Upon his resignation, Cover's obligations under Section 6 of the Grant Agreement—including the twenty-four (24) month noncompetition and nonsolicitation covenants—became immediately operative.

34.     Cover resigned after failing to meet the performance metrics goals established under the Grant Agreement, electing to resign when it became apparent that Munz would terminate his employment for cause. Despite this resignation, Cover remained bound by the restrictive covenants in the Grant Agreement, which survive the termination of his employment, whether by resignation or otherwise.

35.     Rather than honor his contractual obligations, Cover immediately began planning to compete directly against Munz by forming a competing roofing and siding business with Defendant Atkinson.

36.     Upon information and belief, Cover and Atkinson formed or caused to be formed Defendant Fugida, LLC d/b/a Blue Collar Exteriors for the purpose of competing directly with Munz in the roofing, gutter, and siding services market.

37.     Blue Collar Exteriors provides roofing, gutter, and siding services—the exact services that constitute a "Competitor" business under Section 6(b) of the Grant Agreement.

        a.     Upon information and belief, Blue Collar Exteriors is actively soliciting and servicing customers in the same geographic areas where Munz conducts business operations, in direct violation of the Restricted Area provisions of the Grant Agreement.

        b.     Upon information and belief, Cover is using Munz's Confidential Information—including customer lists, pricing strategies, and vendor relationships—to benefit Blue Collar Exteriors and to unfairly compete against Munz.

        c.     Upon information and belief, Cover and/or Blue Collar Exteriors have solicited and/or hired employees of Munz in violation of Section 6(c) of the Grant Agreement.

        d.     Upon information and belief, Cover and/or Blue Collar Exteriors have solicited customers of Munz in violation of Section 6(c) of the Grant Agreement.

38.     Cover's conduct in forming and operating Blue Collar Exteriors constitutes a willful, deliberate, and knowing breach of the noncompetition, nonsolicitation, and confidentiality covenants contained in Section 6 of the Grant Agreement.

39.     Cover's breaches commenced immediately upon termination of his employment and are ongoing. The twenty-four (24) month restrictive period has not yet expired.

40.     Defendant Atkinson, upon information and belief, has aided and abetted Cover in breaching his restrictive covenants by jointly operating Blue Collar Exteriors and benefiting from the Confidential Information that Cover has misappropriated from Munz.

41.    Cover's actions demonstrate a deliberate strategy to usurp Munz's business opportunities, misappropriate its confidential information and trade secrets, and compete directly against his former employer in flagrant violation of his contractual obligations.

42.    This was not an accidental breach— it was a calculated effort to hijack Munz's customer relationships, employee talent, and confidential business information, and to unlawfully compete in direct violation of the Grant Agreement and applicable law.

**Blue Collar Exteriors**

43.    On December 21, 2025, Defendant Atkinson formed Fugida, LLC.

44.    On January 3, 2026, Defendants received the fictitious name "Blue Collar Exteriors" for Fugida.

45.    Blue Collar Exteriors provides roofing, gutter, and siding services in direct competition with Munz in the Commonwealth of Pennsylvania and the State of New Jersey and advertises heavily on social media:

 



46.    Cover's involvement with Blue Collar Exteriors—whether as an owner, manager, operator, employee, consultant, or otherwise—directly violates the Non-Competition covenant set forth in Section 6(b) of the Grant Agreement.

47.    Upon information and belief, Cover and Atkinson are actively soliciting Munz's customers and diverting business opportunities that rightfully belong to Munz.

48.    Upon information and belief, Cover and Atkinson are using Munz's confidential information—including customer lists, pricing strategies, and vendor relationships—to usurp business opportunities and unfairly compete against Munz.

49.    This conduct violates the Non-Solicitation covenant set forth in Section 6(c) of the Grant Agreement, which prohibits Cover from soliciting customers of Munz for a period of twenty-four (24) months following termination.

50.    This conduct also violates the Confidentiality covenant set forth in Section 6(a) of the Grant Agreement, which prohibits Cover from disclosing or using Confidential Information for his own benefit or the benefit of any other person.

51.    Defendants' conduct constitutes a breach of contract, specifically the Grant Agreement and its restrictive covenants.

52.    Defendants' conduct further constitutes unfair competition under Pennsylvania and New Jersey law.

53.    Defendant Atkinson knowingly aided and abetted Cover's breaches of the Grant Agreement by forming and operating Blue Collar Exteriors with Cover, and by benefiting from the confidential information that Cover misappropriated from Munz.

54.    Blue Collar Exteriors is vicariously liable for Cover's breaches, and is also directly liable for tortious interference with Plaintiffs' contractual and business relationships.

55.    Cover's breaches of the restrictive covenants commenced immediately upon or shortly before termination of his employment and are ongoing.

56.    The twenty-four (24) month non-competition and non-solicitation periods under Section 6(b) and Section 6(c) of the Grant Agreement have not yet expired.

57.    Cover's confidentiality obligations under Section 6(a) of the Grant Agreement are perpetual and remain in full force and effect.

58.    Cover's actions demonstrate a deliberate strategy to usurp Munz's business opportunities, misappropriate its confidential information and trade secrets, and compete directly against his former employer in flagrant violation of his contractual obligations.

59.     This was not an accidental breach—it was a calculated effort to hijack Munz's customer relationships, employee talent, and confidential business information, and to unlawfully compete in direct violation of the Grant Agreement.

60.     Defendants' conduct has caused and continues to cause irreparable harm to Plaintiffs, including lost customer relationships, lost business opportunities, and damage to Munz's goodwill and competitive position.

61.     Plaintiffs cannot adequately quantify the harm caused by Defendants' ongoing breaches, as customer relationships and confidential information, once disclosed or diverted, cannot be recovered.

62.     Pursuant to Section 6(e) of the Grant Agreement, Plaintiffs are entitled to injunctive relief restraining Defendants from continuing their unlawful conduct.

63.     Section 6(e) of the Grant Agreement expressly provides that Cover "acknowledges that the Company and its Subsidiaries would be irreparably injured by a violation of the provisions of this Section 6."

64.     Section 6(e) further provides that Plaintiffs "shall be entitled to a preliminary injunction, temporary restraining order, or other equivalent relief, restraining Participant from any actual or threatened breach of the provisions of this Section 6."

65.     Pursuant to Section 6(f) of the Grant Agreement and the Defend Trade Secrets Act, Plaintiffs are entitled to recover their costs and expenses, including reasonable attorneys' fees, incurred in enforcing the restrictive covenants.

66.     Defendants have not voluntarily ceased their unlawful acts, thus necessitating this lawsuit.

## COUNT I:
## BREACH OF CONTRACT
### (Restrictive Covenants – Injunctive Relief)

67. Plaintiffs reallege and incorporate by reference all prior Paragraphs as if re-stated fully herein.

68. The Grant Agreement is a valid and enforceable contract executed by Defendant Richard Cover with Armor Buyer Parent, LP and Armor Employee Holdco, LLC.

69. Defendant Cover breached the Grant Agreement by violating Section 6(a) (Confidentiality), disclosing and using Plaintiffs' Confidential Information for his own benefit and the benefit of Blue Collar Exteriors.

70. Defendant Cover further breached the Grant Agreement by continuing to operate a competing business within the restricted territories.

71. As a result of Defendant Cover's willful and intentional actions, Defendant Cover has caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm and injury to Plaintiffs.

72. Section 6(e) of the Grant Agreement expressly provides that Plaintiffs shall be entitled to injunctive relief restraining Defendant Cover from any breach or threatened breach of the restrictive covenants, and that Defendant Cover acknowledges Plaintiffs would be irreparably injured by any such violation.

73. Plaintiffs have no adequate remedy at law and no means of enforcing the restrictive covenants in the Grant Agreement—and remedying the irreparable harm Plaintiffs have suffered and continue to suffer—other than to seek injunctive relief from this Court.

74. Attorneys' fees and costs are permitted under Section 6(f) of the Grant Agreement.

## COUNT II:
## DEFEND TRADE SECRETS ACT
## (18 U.S.C. § 1836)

75.     Plaintiffs reallege and incorporate by reference all prior Paragraphs as if re-stated fully herein.

76.     The Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*., provides a private civil action for misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

77.     Plaintiffs own numerous trade secrets, including, but not limited to, customer lists, customer preferences and project histories, pricing models and bidding strategies, vendor and supplier relationships and pricing, marketing strategies, employee compensation and performance data, and proprietary roofing and siding business methods and operational procedures.

78.     Each of Plaintiffs' trade secrets derives independent economic value from not being generally known or readily ascertainable, and from providing Plaintiffs with significant competitive advantages in the roofing and siding services marketplace.

79.     Plaintiffs' trade secrets are disclosed only to employees and trusted business partners under strict confidentiality obligations.

80.     During the time period described above, Plaintiffs disclosed their trade secrets to Defendant Cover for the sole purpose of allowing him to perform his duties as General Manager of Munz.

81.     Defendant Cover was contractually required to maintain the confidentiality of all such trade secrets and confidential materials, both during and after his employment with Munz.

82.     Without authority or consent, Defendants are using Plaintiffs' confidential information—including customer lists, pricing strategies, vendor relationships, and proprietary

business methods—to operate Blue Collar Exteriors, thereby misappropriating Plaintiffs' trade secrets.

83.     Defendants intentionally, and without Plaintiffs' authorization, misappropriated Plaintiffs' trade secrets for their own economic benefit, with knowledge that their conduct would injure Plaintiffs by diverting customers, vendors, employees, and goodwill to their competing roofing and siding business.

84.     As a direct and proximate result of Defendants' willful misappropriation and unlawful use of Plaintiffs' trade secrets, Plaintiffs have suffered and will continue to suffer irreparable injury.

85.     Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Plaintiffs' trade secrets should be enjoined.

86.     Defendants' conduct was willful and malicious, warranting an award of exemplary damages and attorneys' fees under 18 U.S.C. § 1836(b)(3)(C) and (D).

## COUNT III:
## TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Defendants Brian Atkinson and Fugida, LLC d/b/a Blue Collar Exteriors)

87.     Plaintiffs reallege and incorporate by reference all prior Paragraphs as if re-stated fully herein.

88.     The Management Unit Grant and Contribution Agreement (the "Grant Agreement") between Defendant Cover and Plaintiffs is a valid and enforceable contract containing restrictive covenants that protect Plaintiffs' legitimate business interests.

89.     Defendant Atkinson and Blue Collar Exteriors knew of the existence of the Grant Agreement and of Plaintiffs' contractual relationship with Cover, including the restrictive covenants binding Cover.

90.    Defendant Atkinson and Blue Collar Exteriors intentionally and improperly interfered with the Grant Agreement by: (a) inducing Cover to breach his non-competition covenant by forming and operating a competing roofing, gutter, and siding business; (b) inducing Cover to breach his non-solicitation covenant by jointly soliciting Munz's customers and employees; and (c) inducing Cover to breach his confidentiality covenant by using Plaintiffs' Confidential Information to operate Blue Collar Exteriors and compete unfairly against Munz.

91.    As a result of Defendants Brian Atkinson's and Blue Collar Exteriors' tortious conduct, Defendant Cover breached his contractual obligations to Plaintiffs, customers and employees were diverted, Plaintiffs' confidential information was misappropriated, and Plaintiffs have suffered damages.

92.    Defendants Brian Atkinson's and Blue Collar Exteriors' tortious interference has caused Plaintiffs to suffer irreparable injury and will continue to do so unless enjoined.

93.    Because Defendants Brian Atkinson and Blue Collar Exteriors acted intentionally and maliciously in inducing Cover to breach his contractual obligations, Plaintiffs are entitled to punitive damages.

**COUNT IV:**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS**

94.    Plaintiffs reallege and incorporate by reference all prior Paragraphs as if re-stated fully herein.

95.    Plaintiffs maintain ongoing business relationships and prospective contractual relations with potential customers, existing customers, vendors, and suppliers in the roofing and siding services market.

96.    These relationships and expectancies constitute valid prospective contractual relations under Pennsylvania law.

97.    Defendants knew of Plaintiffs' prospective business opportunities, including with prospective customers seeking roofing, gutter, and siding services in the Commonwealth of Pennsylvania and the State of New Jersey.

98.    Defendants intentionally and improperly interfered with these relationships and prospects by, among other things:

a.    Using Plaintiffs' confidential customer lists and contact information to identify and solicit Munz's prospective customers before Munz could secure their business;

b.    Using Plaintiffs' confidential pricing models and bidding strategies to underbid Munz on prospective roofing and siding projects, thereby diverting business opportunities that would have otherwise gone to Munz;

c.    Exploiting Plaintiffs' vendor and supplier relationships to gain favorable pricing and terms, enabling Blue Collar Exteriors to compete unfairly for Munz's prospective customers; and

d.    Using Plaintiffs' confidential business methods, operational procedures, and trade secrets to gain an unfair competitive advantage and interfere with Plaintiffs' economic opportunities in the roofing and siding services market.

99.    Defendants' conduct was without privilege or justification, and undertaken for their own economic benefit and to the detriment of Plaintiffs.

100.    As a direct and proximate result of Defendants' tortious interference, Plaintiffs have suffered damages, including lost business prospects, lost revenues, harm to goodwill, and disruption of Munz's ability to develop and expand its roofing and siding business.

101.    Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages under Pennsylvania law.

## COUNT V:
## BREACH OF CONTRACT - DAMAGES

102.    Plaintiffs reallege and incorporate by reference all prior Paragraphs as if re-stated fully herein.

103.    The Management Unit Grant and Contribution Agreement (the "Grant Agreement") is a valid and enforceable contract executed by Defendant Richard Cover with Armor Buyer Parent, LP and Armor Employee Holdco, LLC.

104.    Defendant Cover materially breached the Grant Agreement by, among other things:

    a.    Violating Section 6(b) (Non-Competition) by owning, managing, operating, and/or rendering services to Blue Collar Exteriors, a Competitor engaged in roofing, gutter, and siding services in the Restricted Area;

    b.    Violating Section 6(c) (Non-Solicitation) by soliciting employees and customers of Munz;

    c.    Violating Section 6(a) (Confidentiality) by disclosing and using Plaintiffs' Confidential Information for his own benefit and the benefit of Blue Collar Exteriors; and

    d.    Diverting Munz's customers, employees, vendors, and goodwill to Blue Collar Exteriors.

105.    As a direct and proximate result of Defendant Cover's breaches, Plaintiffs have suffered and will continue to suffer damages, including but not limited to lost profits, lost goodwill, damage to Munz's competitive position, costs of enforcement, and attorneys' fees and costs pursuant to Section 6(f) of the Grant Agreement.

106.    Plaintiffs are entitled to recover judgment against Defendant Cover for all damages sustained as a result of his breaches of the Grant Agreement.

**COUNT VI:**
**CIVIL CONSPIRACY**
**(Against Defendants Brian Atkinson and Fugida, LLC d/b/a Blue Collar Exteriors)**

107.    Plaintiffs reallege and incorporate by reference all prior Paragraphs as if re-stated fully herein.

108.    Defendants Richard Cover, Brian Atkinson, and Fugida, LLC d/b/a Blue Collar Exteriors entered into a combination, agreement, or understanding to engage in unlawful conduct designed to harm Plaintiffs' legitimate business interests and competitive position in the roofing and siding services market.

109.    The object of the conspiracy was to: (a) violate Cover's restrictive covenants under the Grant Agreement, including the non-competition, non-solicitation, and confidentiality provisions; (b) misappropriate Plaintiffs' trade secrets and confidential information for Defendants' competitive advantage; (c) systematically divert Plaintiffs' customers, employees, and business opportunities to Blue Collar Exteriors; and (d) tortiously interfere with Plaintiffs' contractual and prospective business relationships to weaken Munz's market position.

110.    In furtherance of this conspiracy, Defendants committed numerous overt acts, including but not limited to: (a) forming Fugida, LLC d/b/a Blue Collar Exteriors as a vehicle to compete directly against Munz in violation of Cover's contractual obligations; (b) actively soliciting Munz's customers and employees in the Restricted Area; (c) using Plaintiffs' confidential customer lists, pricing strategies, vendor relationships, and proprietary business methods to unfairly compete against Munz; (d) operating a competing roofing, gutter, and siding business in the geographic areas where Munz conducts business operations; and (e) coordinating their efforts to maximize the damage to Plaintiffs' business while benefiting from Cover's breach of his contractual obligations.

111.    Defendants acted with a common purpose and shared intent to harm Plaintiffs' business, divert Munz's revenue streams, and establish Blue Collar Exteriors as a competitor using unlawfully obtained advantages derived from Cover's position as former General Manager of Munz.

112.    Each Defendant willfully and knowingly participated in the conspiracy and performed acts in furtherance of the conspiracy's unlawful objectives.

113.    As a direct and proximate result of Defendants' civil conspiracy, Plaintiffs have suffered and will continue to suffer substantial damages, including but not limited to lost customers, lost employees, lost revenues, diverted business opportunities, damage to goodwill and reputation, erosion of competitive position, and costs of enforcement.

114.    Defendants' conduct was willful, malicious, and undertaken in reckless disregard of Plaintiffs' rights, demonstrating conscious indifference to Plaintiffs' contractual protections and legitimate business interests, thereby entitling Plaintiffs to punitive damages under applicable law.

**COUNT VII:**
**AIDING AND ABETTING BREACH OF CONTRACT**
**(Against Defendant Atkinson)**

115.    Plaintiffs reallege and incorporate by reference all prior Paragraphs as if re-stated fully herein.

116.    The Management Unit Grant and Contribution Agreement between Defendant Richard Cover and Plaintiffs is a valid and enforceable contract containing restrictive covenants, including comprehensive non-competition, non-solicitation, and confidentiality provisions designed to protect Plaintiffs' legitimate business interests.

117.    Defendant Atkinson had actual knowledge of the Grant Agreement and its restrictive covenants that legally bound Defendant Cover, including Cover's twenty-four (24)

month non-competition and non-solicitation obligations and his perpetual confidentiality duties to Plaintiffs.

118.    Defendant Cover materially breached the Grant Agreement by violating each of the restrictive covenants as alleged throughout this Complaint.

119.    Defendant Atkinson knowingly and substantially assisted and encouraged Defendant Cover in breaching the Grant Agreement by: (a) forming Fugida, LLC d/b/a Blue Collar Exteriors with Cover to serve as the primary vehicle for competing against Munz in direct violation of Cover's non-competition covenant; (b) jointly operating a roofing, gutter, and siding business in the Restricted Area, enabling Cover's ongoing breach of his non-competition obligations; (c) jointly soliciting and servicing Munz's customers in violation of Cover's non-solicitation covenant; (d) knowingly benefiting from and actively utilizing Plaintiffs' confidential information that Cover misappropriated in breach of his confidentiality obligations; (e) providing Cover with the corporate structure, business partnership, and operational means necessary to breach his contractual obligations; and (f) encouraging and facilitating Cover's continued violations of the Grant Agreement by serving as Cover's business partner in the competing enterprise.

120.    Defendant Atkinson's substantial assistance was a material and proximate cause of Cover's breaches of the Grant Agreement, as Cover could not have effectively competed against Munz without Atkinson's partnership, resources, and active participation in the competing business.

121.    Defendant Atkinson acted with knowledge that his conduct would assist Cover in breaching the Grant Agreement and with the specific intent to help Cover violate his contractual obligations to Plaintiffs.

122.    As a direct and proximate result of Defendant Atkinson's aiding and abetting Cover's breaches, Plaintiffs have suffered and will continue to suffer substantial damages,

including but not limited to lost customers, lost revenues, misappropriation and misuse of confidential information, damage to goodwill and competitive position, diverted business opportunities, and enforcement costs.

123.    Defendant Atkinson's conduct was willful, intentional, and undertaken in reckless disregard of Plaintiffs' contractual rights and legitimate business interests, thereby entitling Plaintiffs to punitive damages under applicable law.

## PRAYER

WHEREFORE, Plaintiffs request judgment with each item of this prayer being for relief additional to, and alternative to each other item and not an election of remedies, as follows:

A.    Preliminary and permanent injunctive relief enjoining Defendants from: (i) engaging in any business that competes with Munz in the roofing, gutter, and siding services market; (ii) soliciting, contacting, or doing business with any customers of Munz; (iii) soliciting, recruiting, or hiring any employees of Munz; (iv) using, disclosing, or disseminating any of Plaintiffs' Confidential Information or trade secrets; and (v) operating Blue Collar Exteriors or any similar competing business during the remaining term of the restrictive covenants;

B.    An order requiring Defendants to immediately return all Confidential Information, trade secrets, customer lists, pricing information, and any other proprietary materials belonging to Plaintiffs;

C.    An order requiring Defendants to identify all customers they have solicited or serviced using Plaintiffs' Confidential Information;

D.    An order requiring Defendants to provide an accounting of all revenues and profits derived from their wrongful conduct;

E.    Compensatory damages in an amount to be determined at trial;

F.      Disgorgement of all profits earned by Defendants as a result of their unlawful conduct;

G.      Exemplary and punitive damages against all Defendants in an amount sufficient to punish Defendants and deter similar conduct;

H.      Attorneys' fees and costs pursuant to Section 6(f) of the Grant Agreement, the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(D), and any other applicable law;

I.      Pre-judgment and post-judgment interest at the maximum rate permitted by law;

J.      An extension of the restrictive covenant periods to account for the time during which Defendants have been in violation; and

K.      Such other and further relief as the Court deems just and proper.

Dated: February 13, 2026                    Respectfully Submitted,

                                    By: _____

                                        Evan M. Goldman
                                        EVAN GOLDMAN LAW, PLLC
                                        225 Wilmington West Chester Pike, Suite 200
                                        Chadds Ford, Pennsylvania 19317
                                        Tel: 215-965-1553
                                        Email: evan@evangoldmanlaw.com

                                        Matthew Margolis
                                        (*Pro hac vice* forthcoming)
                                        MARGOLIS PLLC
                                        700 Rosemary Avenue, #204
                                        West Palm Beach, Florida 33401
                                        Tel: 561-203-9643
                                        Email: matthew@margolispllc.com

## VERIFICATION

I, Sam Giampapa, hereby declare as follows:

1.      I am the Division President of Plaintiff LCLFG, LLC d/b/a Munz Roofing and Siding and, as applicable, Armor Employee HoldCo, LLC and/or Armor Buyer Parent, LP (collectively, "Plaintiffs").

2.      I have reviewed the foregoing Verified Complaint.

3.      I have personal knowledge of the facts set forth therein or have been informed of such facts by those within the organization who have personal knowledge, and I believe those facts to be true and correct.

4.      The allegations contained in the foregoing Verified Complaint are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 13th day of February, 2026.



Sam Giampapa